IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ALLIE HAMILTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FAMILY DOLLAR STORES OF )<br>MISSOURI, LLC, FAMILY DOLLAR, )<br>INC., )<br>)<br>Defendants. ) | Case No. 4:22-cv-00028-RK |

### ORDER

Before the court is Family Dollar Stores of Missouri, LLC, and Family Dollar, Inc.'s Motion to Compel Arbitration and Dismiss, or Alternatively Stay Action. (Doc. 15.) The motion is fully briefed. (Docs. 16, 20, 26.) After careful consideration and for the reasons explained below, Defendants' motion to compel arbitration (Doc. 15) is **GRANTED** as to the most recent 2020 arbitration agreement. Accordingly, pursuant to 9 U.S.C. § 3, this case is **STAYED** pending resolution of the arbitration proceedings.

### I. Background

Defendants Family Dollar Stores of Missouri, LLC, and Family Dollar, Inc. (collectively, "Family Dollar") are separate legal entities but are "part of a single, integrated enterprise" with "highly interrelated" business operations. (Doc. 1-1 at ¶¶ 5, 9.) As part of its onboarding process, Family Dollar trained new hires and informed them of company policies through various modules in an online interface called Family Dollar University ("FDU"). (Doc. 16-1 at 3, ¶ 8.) Employees accessed FDU modules through a unique user ID and password. (*Id*. at ¶ 6.) Employees created their own passwords and were prohibited from sharing them with anyone else. (*Id.*) As they navigated FDU, the system recorded the time and date at which employees completed the various modules, including one titled, "Open Door and Arbitration at Family Dollar" ("arbitration module"). (*Id*. at ¶ 11.)

The arbitration module of FDU included access to an arbitration agreement ("2014 Arbitration Agreement") for employees to review and ultimately accept. (*Id*. at ¶ 7.) To complete the arbitration module, employees had to click three boxes: first, to download the 2014 Arbitration

Agreement; second, to indicate the employee had reviewed the agreement; and third, to acknowledge the employee had read and is ready to accept the agreement. (*Id.* at ¶ 8.) To accept the 2014 Arbitration Agreement through the arbitration module, the employee had to click a button labeled, "I ACCEPT," located under a bolded acknowledgment. (*Id.* at ¶ 10; 3 at ¶ 11; *see also id.* at 12.) FDU records the date and time the employee clicks the "I ACCEPT" button, completing the arbitration module. (*Id.* at 4, ¶ 11.)

Family Dollar hired Plaintiff around June 1, 2014. (*See* Doc. 20-1 at 1, ¶ 7.) Plaintiff attests she "had not heard of" and "was not aware of" an arbitration agreement with Family Dollar prior to the instant lawsuit. (*Id.* at 1, ¶¶ 3-5.) More specifically, Plaintiff attests she "do[es] not recall" whether she completed any online training when she was hired by Family Dollar in 2014, and that the hiring manager at the time "had a practice of completing what [the manager] referred to as 'easy paperwork' to expedite" the hiring process. (*Id.* at 2, ¶¶ 9, 10.) In support of its motion to compel arbitration, however, Family Dollar provided electronic records from FDU. Specifically, the records show that Plaintiff accessed the arbitration module on June 9, 2014, and that the "accept" button within the arbitration module was clicked under Plaintiff's user ID at 1:00:14 PM on the same day. (*See* Doc. 16-1 at 4, ¶ 12; *id.* at 19.)

In October 2020, Family Dollar sought to replace the 2014 Arbitration Agreement with a new arbitration agreement ("2020 Arbitration Agreement"). (*See* Doc. 16-2 at 5.) Family Dollar attempted to notify employees of the 2020 Arbitration Agreement in three ways. First, Family Dollar tasked managers – including Plaintiff [1] – with posting a flyer announcing the new 2020 Arbitration Agreement in the break area of the store. (Doc. 16-1 at 5, ¶¶ 14, 15, 17.) Second, Family Dollar had "arbitration agreement mailers" (including a memorandum, FAQs, and the 2020 Arbitration Agreement itself [2]) sent to its employees via USPS first-class mail. (Doc. 16-2 at 2, 4-31.) Third, Family Dollar placed a notice regarding the 2020 Arbitration Agreement on the bottom of each employee's pay-stubs for a period of time. (*See* Doc. 16-3 at 5-8.) All three notices stated

---

[1] Although she was initially hired as a part-time employee in 2014, Plaintiff became a full-time store manager in 2015. (Doc. 20-1 at 2, ¶ 8; 3 at ¶¶ 11, 12.)

[2] The 2020 Arbitration Agreement itself, signed only by Michael A. Witynski, President and CEO, provides the agreement's "Effective Date . . . is December 10, 2020." (Doc. 16-2 at 17.) The 2020 Arbitration Agreement also states it "is the full and complete agreement relating to the formal resolution of disputes between the Parties, and supersedes any previous arbitration agreement between the Parties," except for claims made as of October 23, 2020. (*Id.* at 16, ¶ 19.) Finally, the 2020 Arbitration Agreement includes a provision that "if for any reason this Agreement is held not to be enforceable, then any prior arbitration agreement between the Parties shall remain in effect." (*Id.*)

2

that the new arbitration agreement would become effective on December 10, 2020, and would apply to anyone employed by Family Dollar on that date. (Docs. 16-1 at 22; 16-2 at 5, 6; 16-3 at 5-8.)

As to the arbitration flyer, Family Dollar submitted electronic records showing the arbitration-flyer task was marked as completed on "2020-10-27" by "fdstores/0978559," identifying Plaintiff's employee number. (Doc. 16-1 at 5, ¶ 18; *id.* at 24.) In her affidavit opposing Family Dollar's motion to compel, Plaintiff attests only that she "do[es] not recall hanging a sign that mentioned an arbitration agreement," and that she regularly had an "assistant manager electronically sign off on tasks for [her]" on her days off work. (Doc. 20-1 at 2, ¶¶ 15, 19.)

As to the arbitration agreement mailers, Toppan Merrill (tasked by Family Dollar with preparing and sending the mailers) conducted a National Change of Address search and updated addresses for more than 200,000 individuals whom Family Dollar had provided last known addresses. (Doc. 16-2 at 2, ¶ 3.) Toppan Merrill sent the arbitration mailers via USPS first-class mail on October 23, 2020. (*Id.* at ¶ 4.) Records submitted in support of Family Dollar's motion to compel indicate the mailer was both sent to Plaintiff and, at least through December 23, 2020, the mailer sent to Plaintiff was not returned as undeliverable or for any other reason. Plaintiff attests, however, that she did not receive any arbitration agreement in the mail, whether from Family Dollar or anyone else. (Doc. 20-1 at 2, ¶ 20.) Finally, as to the notices placed on employees' pay-stubs, Plaintiff attests she never looked at her pay-stubs and did not have a reason to do so because she was a salaried employee paid by direct deposit. (*Id.* at 2-3, ¶¶ 21-24.)

On January 14, 2021, Plaintiff contacted the Family Dollar's Human Resources Department to allege claims of discrimination and harassment. (Doc. 1-1 at ¶ 126.) Family Dollar terminated Plaintiff's employment the next day. (Doc. 1-1 at ¶ 127.) On November 26, 2021, Plaintiff filed a civil lawsuit against Family Dollar in the Circuit Court of Jackson County, Missouri, alleging claims of race discrimination and retaliation in violation of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.* and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (*See* Doc. 1-1 at 2-21.) Family Dollar removed the case to federal court on January 18, 2022, under federal question jurisdiction (28 U.S.C. § 1331) and diversity of citizenship jurisdiction (28 U.S.C. § 1332). (Doc. 1.)

Family Dollar seeks to compel Plaintiff to arbitration pursuant to either the 2014 or 2020 Arbitration Agreement.

## II. Legal Standard

Section 2 of the Federal Arbitration Act (FAA), its primary substantive provision, states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Under § 3, a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3); *cf. Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021) (recognizing, "'district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration'") (quoting *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011)). "Under § 4, a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Rent-A-Center*, 561 U.S. at 68 (quoting 9 U.S.C. § 4). In whole, the FAA "reflect[s] . . . a liberal federal policy favoring arbitration." *Driver v. BPV Mkt. Place Inv'rs, L.L.C.*, No. 4-17-cv-1607-CAS, 2018 WL 3363795, *4 (E.D. Mo. July 10, 2018) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (other citation and internal quotation marks omitted).

Ultimately, the party seeking to compel litigation to arbitration "bears the burden of proving that there was a valid and enforceable agreement." *Duncan v. Int'l Markets Live, Inc.*, 20 F. 4th 400, 402 (8th Cir. 2021) (citation omitted). In deciding a motion to compel arbitration, similar to the standard on a motion for summary judgment, the court must view the record in a light most favorable to the non-movant. *Id.* at 403.

## III. Discussion

As the United States Supreme Court has recognized, "[t]he FAA reflects the fundamental principle that arbitration is a matter of contract," *Rent-A-Center*, 561 U.S. at 67. Accordingly, when considering a motion to compel arbitration, the only relevant inquiries are "(1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of the agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004) (citations omitted).

As a matter of contract, just as parties can agree to arbitrate disputes that may arise between them in the first instance, parties may also "agree to have arbitrators decide threshold questions of

4

arbitrability." *Green*, 653 F.3d at 769 (citation omitted); *accord Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (affirmatively recognizing "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence") (citation omitted). The United States Supreme Court has recognized arbitration clauses that delegate arbitrability issues to an arbitrator are "merely a specialized type of arbitration agreement," on which the FAA "operates . . . just as it does on any other." *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (citation and quotation marks omitted); *Rent-A-Center*, 561 U.S. at 70 (delegation provisions as agreements to arbitrate "gateway issue[s]" are "simply . . . additional, antecedent agreement[s] the party seeking arbitration asks the federal court to enforce") Thus, as with every motion to compel arbitration, the initial question is whether the moving party has sufficiently proved a valid agreement to arbitrate, including whether to arbitrate arbitrability. *Schein*, 139 S .Ct. at 530 ("if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, the court may not decide the arbitrability issue").

Here, Family Dollar asserts both arbitration agreements presented to the court include a delegation provision.[3] In opposing Family Dollar's motion to compel, Plaintiff specifically challenges the delegation provisions of both agreements as a matter of state contract law. The question here, then, is whether the delegation provision within each agreement is valid under Missouri contract law.[4] *Shockley v. PrimeLending*, 929 F.3d 1012, 1018-19 (8th Cir. 2019) (looking to Missouri contract principles to determine whether the delegation provision in the underlying arbitration agreement is valid); *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015) ("If a valid and enforceable arbitration agreement exists under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration.").

Under Missouri law, a valid contract requires three things: "offer, acceptance, and bargained for consideration." *TD Auto Fin., LLC v. Bedrosian*, 609 S.W.3d 763, 768 (Mo. Ct. App. 2020) (citation and quotation marks omitted); *see also Vest v. Cracker Barrel Old Cty. Store, Inc.*, 371 F. Supp. 3d 593, 598-601 (W.D. Mo. 2018) (finding arbitration agreement a valid

---

[3] Specifically, the 2014 Arbitration Agreement includes within "disputes covered by this agreement" "any claim or controversy regarding the Agreement . . . or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation." (Doc. 16-1 at 15.) The 2020 Arbitration Agreement similarly provides that "[t]he arbitrator shall have the exclusive authority to resolve any disputes or claims regarding arbitrability or the formation, interpretation, validity, applicability, unconscionability, or enforceability of this Agreement." (Doc. 16-2 at 12.)

[4] Both parties agree Missouri law applies to the arbitration agreements proffered by Family Dollar.

5

agreement with adequate offer, acceptance, and consideration under Missouri law). Plaintiff argues the delegation agreements within the 2014 and 2020 Arbitration Agreement are not valid under Missouri contract principles because of a lack of acceptance and adequate consideration. Because the 2020 Arbitration Agreement by its terms supersedes the prior 2014 Arbitration Agreement, the Court first must consider whether the delegation agreement of the 2020 Arbitration Agreement is a valid contract under Missouri law.

### A. Offer and Acceptance

As a basic principle of contract law, to enter into an agreement, Missouri law requires "the minds of the contracting parties must meet upon and assent to the same thing in the same sense and at the same time." *Viacom Outdoor, Inc. v. Tauil*, 254 S.W.3d 234, 238 (Mo. Ct. App. 2008). The first element – offer – means "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Walker v. Rogers*, 182 S.W.3d 761, 767 (Mo. Ct. App. 2006) (citation and quotation marks omitted). "Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer." *Shockley*, 929 F.2d at 1019 (citation and quotation marks omitted). Such acceptance must be "unequivocal" in that the words or conduct constituting acceptance must "objectively manifest [the offeree's] intent to be presently bound." *Id.* (citations and quotation marks omitted). Silence generally cannot satisfy acceptance. *Kunzie v. Jack-In-The-Box, Inc.*, 330 S.W.3d 476, 484 (Mo. Ct. App. 2010).

There is no question Plaintiff did not sign the 2020 Arbitration Agreement. Instead, Family Dollar argues Plaintiff accepted the 2020 Arbitration Agreement, including the delegation provision, by continuing her employment with Family Dollar beyond December 10, 2020, having been notified the new arbitration agreement would become effective to those employed by Family Dollar as of that date. In support, Family Dollar primarily relies on an Eighth Circuit opinion in *Berkley v. Dillard's, Inc.*, 450 F.3d 775 (8th Cir. 2006). (Doc. 16 at 15 (citing and discussing *Berkley*).)[5]

In *Berkley*, the Eighth Circuit found – applying Missouri law – that an employee "accepted" an arbitration agreement with her employer by continuing her employment. Specifically, the

---

[5] Defendant also cites in support of this argument a 2009 Eighth Circuit opinion, *McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950 (8th Cir. 2009). (Doc. 16 at 15.) *McNamara* is inapposite here, however, because *McNamara* applied South Dakota law, rather than Missouri law, to determine whether the underlying arbitration agreement was valid. 570 F.3d at 956.

6

Eighth Circuit found the employee's continued employment constituted acceptance of the arbitration agreement because (1) the employer provided the employee an acknowledgment to sign, stating "by virtue of . . . continuing employment," the employee agrees to the arbitration agreement, and (2) the employer told the employee (who refused to sign the acknowledgment) that the arbitration agreement "applied automatically to all employees who continued their employment." 450 F.3d at 777.

Four years later, the Missouri Court of Appeals specifically addressed how *Berkley* fits within Missouri's contract-law framework in *Kunzie v. v. Jack-In-The-Box, Inc*. In *Kunzie*, the Missouri Court of Appeals held that "the manifestation of an employee's unequivocal intention to be bound by an employer's proposed arbitration agreement as a new condition of employment necessitates more than the employee's mere continued work to satisfy Missouri's meeting of the minds [or assent] requirement." 330 S.W.3d at 486. Accordingly, the *Kunzie* court held that the state trial court had erred by relying on *Berkley* to find an employee "accepted" an arbitration agreement by continuing their employment after having been presented with the arbitration agreement. *Id*. at 482.

In *Kunzie*, the state appellate court found Missouri law requires something more than mere continued employment to constitute acceptance of an arbitration agreement:

> It is not disputed . . . that [employee] knew of [employer]'s arbitration policy and, nonetheless continued working. The trial court concluded that these facts alone evidenced [employee]'s acceptance of the arbitration agreement. Using the same logic, we could posit that an employee's continued employment without signing a proffered arbitration agreement reasonably supports a finding that [employee] rejected Employer's condition of arbitration. [Employee]'s rejection and continued employment, under basic contract principles, reasonably could be viewed as [employee]'s counteroffer to [employer] that [employee] would continue his employment without being subject to [employer]'s arbitration policy. [Employer]'s failure to then terminate [at-will employee]'s employment could be deemed to constitute an acceptance of such counter-offer. Without the ascertainment of additional facts, a trial court is unable to determine the intent of the parties. Moreover, without a finding that [employee] and [employer] agreed to submit to arbitration, [employee] cannot be required to arbitrate his dispute with [employer].

*Id*. at 485-86 (footnotes omitted). Consistent with its holding, however, the *Kunzie* court recognized in *Berkley*:

> [d]espite . . . holding that the employee accepted the arbitration agreement by continuing her employment with Dillard's[,] [the Eighth Circuit] included a factual finding that, after the employee refused to sign the arbitration agreement, [the employer] then specifically informed her that her refusal did not affect the

7

arbitration agreement, which applied automatically to all employees who continued their employment.

*Id.* at 485 (citing *Berkley*); *see id.* at 486 n.14 (recognizing "it appears that the *Berkley* court indeed may have relied upon evidence of 'something more' than the employee's mere continuation of employment following [the employer]'s presentation of the arbitration agreement to its employees").

Thus, under Missouri law, while continued employment alone does not manifest assent to an arbitration agreement with an employer, even with knowledge of a specific arbitration agreement, "continued employment may constitute acceptance where the employer's document clearly states that continued employment constitutes acceptance, and the employer informs all employees that continued employment constitutes acceptance." *Shockley v. PrimeLending*, 929 F.3d 1012, 1019 (8th Cir. 2019) (citing *Berkley*); *cf. Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. Ct. App. 2011) (affirming trial court's finding that an employee had not "accepted" an arbitration agreement by continuing her employment after the employer allegedly disseminated the arbitration agreement and the employee "had little more than general knowledge of the existence of the" arbitration agreement).

To support a finding of offer and acceptance – or mutual assent – as to the 2020 Arbitration Agreement, Family Dollar relies on the three notices and Plaintiff's continued employment, after having been notified that should she do so, the new arbitration agreement will apply. As to the arbitration mailer and notice on her pay-stubs, however, Plaintiff raises at least a question of fact whether Family Dollar can show adequate offer and acceptance of the 2020 Arbitration Agreement. Plaintiff attests she never received an arbitration agreement from Family Dollar or anyone else in the mail and never viewed her electronic pay-stubs. Family Dollar, as the party moving to compel arbitration (and thus as the party bearing the burden of proof of a valid arbitration agreement) presents no direct evidence to establish otherwise. For example, Family Dollar provides no direct evidence showing that Plaintiff viewed her pay-stubs or received the arbitration mailer. Were this the entire basis supporting Family Dollar's motion to compel, the Court would have little difficulty in finding Family Dollar failed to satisfy its burden at this stage to be entitled to compel Plaintiff's claims to arbitration. Plaintiff's affidavit raises at least a question of fact whether she received the pay-stub or first-class mail notices sufficient for her continued employment (on the basis of having received such notice). *See, e.g.* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . [is found to] be in issue, the court shall proceed

8

summarily to the trial therof"); *see, e.g.*, *Ramsey v. H&R Block Inc.*, No. 18-00933-CV-W-ODS, 2019 WL 2090691, at *5 (W.D. Mo. May 13, 2019) (denying motion to compel arbitration because defendants failed to demonstrate plaintiff's acceptance of the arbitration agreement and plaintiff "raised a genuine issue of material fact as to formation of a valid arbitration agreement"). There is more, here, however.

In particular, Family Dollar also provides evidence that Plaintiff was tasked with hanging a flyer regarding the 2020 Arbitration Agreement in her store's break room. Moreover, an electronic log shows this task was marked as completed, and the marking incorporated Plaintiff's unique employee ID number. Plaintiff's statements that she "do[es] not recall" hanging this flyer and that her assistant manager would electronically sign off on tasks for Plaintiff "on [her] days off," do not raise a genuine issue of material fact as to contract formation in this case. Plaintiff's statements do not contradict Family Dollar's evidence that Plaintiff completed the task assigned to her as store manager. Notably, Plaintiff does not attest, for example, that she did not hang the flyer, that she did not see the flyer in the break room, that she was not working on the day the task was marked off as completed, or that her assistant manager completed this task for her. Instead, she attests only she does not remember doing so and that her assistant manager sometimes signed off on assigned tasks for her on her days off. These statements do not raise a genuine issue of fact as to contract formation. *See also Ranson v. Securitas Sec'y Servs. USA, Inc.*, No. 1:18-cv-105-SNLJ, 2018 WL 4593707, at *4 (E.D. Mo. Sept. 25, 2018) (evidence that the plaintiff signed the arbitration agreement was not put into question as a disputed factual matter where plaintiff stated only that he did not remember signing the arbitration agreement and he did not recall or understand what the agreement says).

In this way, then, this case is more like *Berkley* than *Kunzie*. The arbitration flyer posted in the store's break room included information where to find the new 2020 Arbitration Agreement. More importantly, the flyer included a specific notice that "If you are employed by [Family Dollar] on December 10, 2020, you will be bound by the new Arbitration Agreement, without further action on your part. You do not need to sign the new Arbitration Agreement." (Doc. 16-1 at 22.) There is no question that Plaintiff continued her employment with Family Dollar on and after December 10, 2020. In light of the uncontested evidence set forth by Family Dollar as explained above, the Court finds Plaintiff accepted the 2020 Arbitration Agreement, including the delegation

9

provision, by continuing her employment on and after December 10, 2020.[6] For these reasons, the Court finds Family Dollar has satisfied its burden to show there was both offer and acceptance of the 2020 Arbitration Agreement.

B. **Consideration**

Plaintiff also argues the 2020 Arbitration Agreement was never formed because it is illusory and lacks consideration to the extent Family Dollar has a unilateral right to amend the arbitration agreement.

Plaintiff acknowledges that mutual promises to arbitrate issues or claims can constitute adequate consideration to form an enforceable contract under Missouri law. (Doc. 20 at 14 (citing *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 776 (Mo. Ct. App. 2014)).) It is equally well-established, however, that "[a] promise is illusory [and thus the contract is not supported by adequate consideration] when one party retains the unilateral right to amend the agreement and avoid its obligation." *Johnson v. Menard, Inc.*, 632 S.W.3d 791, 797 (Mo. Ct. App. 2021) (citation and quotation marks omitted) (holding arbitration provision not enforceable because employer "retained the unilateral authority to modify the delegation clause without limit or notice to" employees, rending the employer's promises illusory and the contract unsupported by adequate consideration). Accordingly, notwithstanding a mutual promise to arbitrate in the 2020 Arbitration Agreement, Plaintiff argues the agreement lacks adequate consideration given Family Dollar's unilateral right to amend the agreement.

As Plaintiff readily acknowledges, however, the 2020 Arbitration Agreement does not expressly reserve any right to amend, modify, or revoke the agreement to any party, much less

---

[6] Plaintiff also broadly argues, with no legal citation or authority,

> Just because a statement was available to Plaintiff to read does not mean that she read it, and if she had not read it th[e]n her continuing to work would not constitute a manifestation of intent to the terms. Even if she had read it at one point, she might have forgotten about it between the time she read it and December 10, 2020, and therefore, again, her continuing to work was not a manifestation of such assent.

(Doc. 20 at 13-14.) To determine the question whether a contract was formed under Missouri law – that is "whether a meeting of the minds occurred" – depends on "'the parties' objective manifestations of intent,'" not a subjective intent as Plaintiff's argument otherwise suggests. *SL EC, LLC v. Ashley Energy, LLC*, 561 F. Supp. 3d 802, 816 (E.D. Mo. 2021) (quoting *Best Buy Builders, Inc. v. Siegel*, 409 S.W.3d 562, 565 (Mo. Ct. App. 2013); citing *Enter. Rent-A-Car co. v. U-Haul Int'l, Inc.*, No. 4:03-CV-1480 CAS, 2017 WL 1063528, at *7 (E.D. Mo. Apr. 9, 2007)).

10

Family Dollar. To the extent such right exists, then, rather than a unilateral right to Family Dollar, nothing in the 2020 Arbitration Agreement appears to limit or exclude an employee like Plaintiff from attempting to do the same thing. Moreover, because it does not expressly provide for or otherwise limit modification, amendment, or revocation, to the extent the agreement provides it "is the full and complete agreement relating to the formal resolution of disputes between the Parties" (Doc. 16-2 at 16, ¶ 19), such provision is equally binding on Family Dollar and Plaintiff. Nothing in the 2020 Arbitration Agreement appears to release Family Dollar from their agreement to arbitrate certain disputes.[7]

Plaintiff has cited no caselaw in support of her argument that the 2020 Arbitration Agreement, to the extent it is silent on the issue of modification, amendment, or revocation, is illusory because of a unilateral right to modify, amend, or revoke the agreement, and the Court is not aware of any such legal authority, either. *Cf. Baker*, 450 S.W.3d at 776 (finding employer's "mutual promise to arbitrate is conditioned on [employer]'s unilateral 'right to amend, modify or revoke this agreement upon thirty (30) days' prior written notice to the Employee" and holding "[i]f [the employer] retains unilateral authority to amend the agreement retroactively, its promise to arbitrate is illusory and is not consideration"); *Johnson*, 632 S.W.3d at 796 ("A promise is illusory when one party retains the unilateral right to amend the agreement and avoid its obligation.") (citation and quotation marks omitted). Plaintiff's argument that the 2020 Arbitration Agreement lacks consideration is without merit.

Accordingly, the Court finds there is no genuine issue of fact placing contract formation in issue and Family Dollar has demonstrated the parties entered into a valid contract to arbitrate arbitrability through the 2020 Arbitration Agreement.[8] Therefore, the Court must compel Plaintiff's claims to arbitration in accordance with the 2020 Arbitration Agreement.

---

[7] To the extent Plaintiff points to the fact that Family Dollar amended the 2014 Arbitration Agreement in support of her lack-of-consideration argument, as Family Dollar points out, the 2020 Arbitration Agreement only applied prospectively. (*See* Doc. 16-2 at 16 (the 2020 Arbitration Agreement does not apply "to any claims at issue in a case . . . on file in court or for which a demand for arbitration has been served on the other Party as of October 23, 2020. In such event, the arbitration agreement in force at the time of such filing or service shall apply to those claims and those claims only.").) This undercuts Plaintiff's argument that such amendment demonstrates only an illusory promise to arbitrate. *See also Baker*, 450 S.W.3d at 777 ("Contracts . . . that permit unilateral, retroactive amendment are deemed illusory and do not constitute consideration to create an enforceable contract.").

[8] Because the Court finds the 2020 Arbitration Agreement is a valid contract and Plaintiff must be compelled to arbitration under that agreement, the Court need not consider the 2014 Arbitration Agreement. If it were to do so, however, it appears the result would be the same.

11

## IV. Whether to Stay or Dismiss Plaintiff's Claims

Family Dollar argues that should the Court grant its motion to compel arbitration, the Court should dismiss this case, rather than stay it. (Doc. 16 at 18.) The FAA generally authorizes courts to stay an action pending an arbitration. *See* 9 U.S.C. § 3. At the same time, the Eighth Circuit has recognized, "district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration.'" *Sommerfeld v. Adesta, LLC*, 2 F.4th 758, 762 (8th Cir. 2021) (quoting *Green*, 653 F.3d at 769). The district court in *Sommerfeld*, for instance, decided to dismiss the action rather than stay it after finding (1) the parties entered into a valid arbitration agreement, and (2) the dispute falls within the scope of that agreement. *Sommerfeld v. Adesta, LLC*, No. 8:19CV488, 2020 WL 4589202, at *5 (D. Neb. April 28, 2020), *aff'd* 2 F.4th at 762; *cf. Astarita v. Menard, Inc.*, No. 5:17-06151-CV-RK, 2018 WL 5928061, at *6 (W.D. Mo. Nov. 13, 2018) (staying rather than dismissing plaintiff's claims where the question of arbitrability is left to be determined to the arbitrator).

Here, Family Dollar's motion to compel arbitration is granted as to the 2020 Arbitration Agreement which includes a delegation provision agreeing to arbitrate arbitrability. Given this posture, the Court will stay Plaintiff's claims pending completion of arbitration rather than dismiss them. *See Bell v. Arise Virtual Sols., Inc.*, No. 4:21-cv-00538-RK, 2022 WL 567841, at *13 (W.D. Mo. Feb. 24, 2022) (same).

---

As set forth in the Background section above, Family Dollar presented evidence that when she was hired, Plaintiff completed an online module that included, specifically, a module requiring her to click an "accept" button regarding the 2014 Arbitration Agreement. Family Dollar presented evidence Plaintiff accessed the module through an ID and password unique to her and clicked the "accept" button on June 9, 2014, at 1:00:14 pm. At most, Plaintiff attests she "do[es] not recall" completing the online training modules and suggests "the manager who hired me had a practice of completing . . . 'easy paperwork' to expedite" the hiring process. These statements do not create a genuine question of fact, in light of the evidence presented by Family Dollar, whether she accepted the 2014 Arbitration Agreement, however. The evidence presented by Family Dollar would otherwise support a finding of offer and acceptance or mutual assent under Missouri law. *See Franklin v. Cracker Barrel Old Country Store*, No. 4:17 CV 00289 JMB, 2017 WL 7691757, at *3-4 (E.D. Mo. April 12, 2017) (applying Missouri law to find electronic acceptance by marking "complete" on online employee training program sufficient acceptance of offer as to arbitration agreement). Moreover, to the extent Plaintiff argues the 2014 Arbitration Agreement lacks consideration for the same reason as the 2020 Arbitration Agreement, the Court finds this argument would be without merit for the same reasons as above.

## V. Conclusion

For the reasons explained above, Defendants' motion to compel arbitration (Doc. 15) is **GRANTED**, and this case is **STAYED** pending completion of arbitration.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: June 29, 2022